MALCOMSON v. MONATON REALTY INVESTING CORPORATION.

(Supreme Court, Appellate Division, Second Department. January 17, 1913.)

1. CORPORATIONS (§ 82*)—SALE OF STOCK—REPURCHASE—EVIDENCE—SUFFICIENCY.

In an action against a corporation to recover the purchase price of corporate stock under its agreement for repurchase, evidence *held* sufficient to sustain the verdict on the theory of the corporation's ratification of the agreement and acceptance of benefits.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 285–295; Dec. Dig. § 82.*]

2. APPEAL AND ERROR (§ 1050*)—RECEPTION OF EVIDENCE—OBJECTIONS.

A party cannot complain of the reception of evidence over his objection, where similar evidence is later admitted without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

3. TRIAL (§ 76*)—RECEPTION OF EVIDENCE—OBJECTIONS.

An objection to testimony sought to be elicited by a question on the ground that it calls for a conclusion should be made before answer.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 183–190, 237; Dec. Dig. § 76.*]

4. APPEAL AND ERROR (§ 179*)—OBJECTIONS TO EVIDENCE—INSTRUCTIONS.

Where a party did not request an instruction directing the jury to disregard certain testimony, the improper refusal of the court to strike it is not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1137–1140; Dec. Dig. § 179.*]

5. EVIDENCE (§ 314*)—HEARSAY—ADMISSIBILITY.

Where a corporation sold its stock with the agreement that, if the purchaser's brother deemed the investment unwise after a careful analysis of the corporation, it would repurchase the stock, evidence in an action upon the guaranty as to hearsay statements made to the brother concerning the value of the stock is admissible, as furnishing a basis for his rejection of the investment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1168–1173; Dec. Dig. § 314.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Nassau County.

Action by A. Sidney Malcomson against the Monaton Realty Investing Corporation. From a judgment for plaintiff, and an order denying defendant's motion for new trial, defendant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Harry E. Shirk, of Brooklyn, for appellant.

Henry L. Maxson, of Hempstead, for respondent.

HIRSCHBERG, J.  The action is on contract to recover the purchase price paid for certain stock of the defendant's under the terms of a guaranty agreement between the purchaser, plaintiff's assignor, and the defendant acting through its agent.

On July 3, 1911, Mabel A. Maxson, plaintiff's assignor, a young unmarried woman residing with her widowed mother and supporting herself by teaching music, was induced by C. McKay Smock to purchase seven shares of the defendant's preferred stock for $1,050. Smock gave Miss Maxson a receipt written on defendant's stationery, and signed by him, "C. McKay Smock, Agent at N. Y. City." Before agreeing to purchase the stock, Miss Maxson obtained a guaranty, written by Smock on the reverse side of the receipt, and reading as follows: .

"July 3, 1911. I hereby guarantee to resell the seven shares (7 shares) of Monaton Realty Investing Corporation preferred stock, and repay to Mrs. Amanda T. Maxson or her daughter, Mabel Maxson, the sum of ten hundred and fifty dollars ($1050.00) on or after the fifteenth day of August, 1911, on demand, after thirty days' notice, provided Henry L. Maxson deems the investment to be unwise, after a careful and complete analysis of the operation, and general character of the business of the Monaton Realty Investing Corporation.                                    C. McKay Smock."

[1] Miss Maxson paid for the stock by two checks, one for $1,000 payable to her order, which she indorsed in blank and delivered to Smock, and one for $50 payable to the order of her mother, which was indorsed in blank by the mother and delivered to Smock. The check for $1,000 was subsequently indorsed in these words, "Pay to Bryant Park Bank, New York, or order, Monaton Realty Investing Corporation, George Reichard, Treas.," and, so indorsed, it was deposited to the credit of the defendant corporation. The check for $50 was subsequently indorsed by Charles E. Nash, the head of defendant's department for the sale of its bonds, and deposited by Nash to his credit. During the times in question Smock was employed under Nash. On July 6, 1911, Henry L. Maxson, the brother of Miss Maxson and the individual mentioned in the guaranty, wrote a letter to the defendant corporation, informing it of the guaranty, and asking for information regarding the defendant's financial condition, stating that he desired such information in order to facilitate the investigation he must make pursuant to the guaranty. On the 7th of that month Smock wrote Maxson a letter, stating that Maxson's communication had been referred to him for attention. A letter dated July 7, 1911,

.addressed to Miss Maxson and signed on behalf of the defendant by its auditor, was admitted in evidence on the trial. It stated, in substance, that the defendant took pleasure in issuing its preferred stock ·certificate to her pursuant to her application received through Mr. C. M. Smock. There is some conflict in the evidence as to whether this letter was actually sent before its date, but the jury would have been warranted in finding that it had been mailed subsequently to the re- ·ceipt of Henry L. Maxson's letter of the 6th, as the envelope in which it was mailed bears the post office time stamp of July 7, 1911, at 7 p. m., and Maxson's letter, in the usual course, should have been delivered to the defendant not later than the morning of the 7th. About :the 13th of July Maxson notified the defendant that he deemed his sister's investment an unwise one, and made a demand on her behalf for the return of the purchase price of the stock, which demand the ·defendant refused. This action was then instituted by the plaintiff .as Miss Maxson's assignee to recover the purchase money, and the ·stock certificate has been duly deposited with the clerk of the court for delivery to the defendant.

On the trial the defendant contended that Smock was not its agent ·for the sale of the stock, and that it owned no stock for sale, but that ·the stock in question belonged to Nash, who had sold it through Smock .as his agent. The learned trial court ruled that there was not suffi- ·cient evidence in the case to establish that Smock was the defendant's .agent for the sale of the stock, but submitted the case to the jury to determine if the defendant, with knowledge of Smock's action, was bound by his guaranty by ratification of the same, and by having re- ·ceived the benefits of the transaction. The jury found for the plaintiff, and from the judgment entered on that verdict awarding the plaintiff the purchase price of the stock, and from the order denying the defendant's motion for a new trial, this appeal has been taken.

While the issue so submitted is a narrow one, and the evidence bearing thereon meager, I think there is sufficient in the record to sustain the verdict. The defendant's witnesses testified that the defendant merely accommodated Nash by cashing the thousand dollar check for him. The jury, however, was warranted in disbelieving this in view ·of the fact that the check was deposited to the credit of the defendant without requiring Nash to identify himself with the transaction by ·indorsing it, and the fact that Nash had a bank account of his own in which he seems to have deposited the check for $50. The transfer ·of the stock by the defendant, with apparent knowledge of the guar- .anty made by Smock, and the retention by it of the thousand dollars, .are sufficient, if true, as the jury was warranted in believing, to con- .stitute a ratification on the part of the defendant of the guaranty ·made by Smock in selling the stock.

[2] The appellant urges that the learned trial court committed re- ·versible error in permitting the witness, Henry L. Maxson, called on 'behalf of the respondent, to testify that he found the value of the stock -in question to be $75 a share, or one-half the price paid by his sister. .I do not think that the objection to this testimony was properly raised

below. The record shows the following from the testimony of the witness Henry L. Maxson:

"I know the value of the seven shares of stock. Have ascertained the same by advertising in the Brooklyn Eagle and by communications with brokers dealing in stocks.

"Mr. Shirk: I object to this, if the court pleases, on the ground that it is not binding on this defendant.

"The Court: Aren't you relying on the tender?

"Mr. Maxson: Yes. I want to show this is one of the reasons why I deemed it unwise, the value, that is all.

"Mr. Shirk: On the further ground it is not competent and admissible. The witness has failed to qualify as an expert as to stock.

"The Court: Proceed.

"Mr. Shirk: Exception.

"By Mr. Maxson: Q. What did you find that value to be? A. I found that value to be not exceeding $75 per share.

"By the Court: Q. You say your value is $75 a share. A. Yes.

"Q. He is not bound to take your conclusion. A. Not at all.

"Q. How did you find it out? A. By my communication with brokers; brokers whom I know dealt in active stocks.

"Q. Did you have any offer for it? A. No; I never received any offers for it.

"Q. Did you offer it at any price? A. No. I didn't offer it except to the company or Mr. Smock; that was all. I wrote to ascertain the value. That is, I stated the purchase price of the stock, and offered to sell for less than a certain amount, and then I received from them the letters which I have here.

"Mr. Shirk: I move to strike out the answer as calling for a conclusion.

"The Court: I will let it stand.

"Mr. Shirk: Exception."

Thus it appears that the appellant's first objection was not made to any specific question, but that, after the witness stated that he had ascertained the value of the stock by communicating with certain brokers and advertising in the Brooklyn Eagle, the appellant's counsel objected to such testimony, and excepted to the court's direction to proceed without striking the same from the record. Thereafter the witness was asked what he found the value of the stock to be, and was allowed to answer without objection or exception.

[3, 4] Finally, the appellant's counsel moved to strike the answer to the last question from the record, as calling for the witness' conclusion, and excepted to the court's refusal to sustain the motion. The appellant's objection should have been made after the question regarding the value of the stock was put and before the answer was given (see Mollineaux v. Clapp, 99 App. Div. 543, 90 N. Y. Supp. 880, and Smith v. Nassau Electric R. R. Co., 57 App. Div. 152, 67 N. Y. Supp. 1044), and a reversal is not necessitated because of the refusal to strike the testimony from the record, as the appellant should have requested the court to instruct the jury to disregard the answers. Smith v. Nassau Electric R. R. Co., supra.

[5] In any event, I do not deem the evidence inadmissible. Of course, the statements made to the witness by others were not competent evidence of value, nor does the witness appear to have qualified as an expert on that subject. According to the guaranty, however, the witness was only authorized to reject the investment if he deemed it unwise "after a careful and complete analysis of the operation, and

general character of the business" of the defendant. Manifestly he could not under that agreement reject the investment upon his mere whim or wish. His rejection must be based on a careful investigation made in good faith (see Smith v. Robson, 148 N. Y. 252, 42 N. E. 677); and it was therefore necessary for the plaintiff to establish that such investigation had been made. In order to do so, it was competent to show that the witness had written to the defendant for information, and had investigated the value of the stock in the market. The purpose of the evidence regarding value, as thus limited, was carefully explained to the jury by the learned trial court, and no exception was taken by the appellant.

The judgment and order appealed from should be affirmed, with costs. All concur.